UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CYNTHIA LOVELY-COLEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-1464 (RBW) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

The plaintiff, Cynthia Lovely-Coley, brings this civil action against the defendant, the District of Columbia, asserting claims of interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611-2619 (2012), arising out of delays in granting her applications for FMLA leave in 2010.  See Civil Complaint for Equitable and Monetary Relief and Demand for Jury Trial ("Compl.") ¶¶ 1-34.  Currently pending before the Court is the District of Columbia's Motion for Summary Judgment ("Def.'s Mot.").  Upon careful consideration of the parties' submissions,[1] the Court concludes that the motion must be denied, and this case must advance to trial.[2]

---

[1] In addition to the filings already mentioned, the Court considered the following submissions in rendering its decision: (1) Memorandum in Support of District of Columbia's Motion for Summary Judgment ("Def.'s Mem."); (2) the District of Columbia's Statement of Undisputed Material Facts ("Def.'s Facts I"); (3) the Plaintiff's Opposition to [the] Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Statement of Genuine Disputed Issues ("Pl.'s Facts"); (5) the District of Columbia's Reply to Plaintiff's Opposition to District of Columbia's Motion for Summary Judgment ("Def.'s Reply"); (6) the [Defendant's] Additional Facts Not Directly Relevant to Above Responses ("Def.'s Facts II"); and (7) the Plaintiff's Surreply to [the] Defendant's Reply in Support of [the] Defendant's Motion for Summary Judgment ("Pl.'s Surreply"), which was ordered by the Court, see May 10, 2016 Order at 1-2, ECF No. 46.

[2] Although a complete copy of the complaint does not appear to have been filed on the public docket, that deficiency has no bearing on the Court's resolution of the motion.

## I. BACKGROUND

The plaintiff "is a detective in the District of Columbia Metropolitan Police Department."[3] Pl.'s Facts ¶ 1. She requested FMLA leave on three occasions in 2010, see id. ¶¶ 2, 3, 4, so that she could "tend to her daughter, who was battling, and would eventually die from[] cancer," Def.'s Mem. at 1 (citing Compl. ¶¶ 9, 19).

### A. The Defendant's Alleged Interference

The plaintiff first applied on May 25, 2010 for FMLA leave, see Pl.'s Facts ¶ 2, seeking 640 hours of sick leave to be taken between May 23, 2010 and September 4, 2010,[4] see Def.'s Mem., Exhibit ("Ex.") 3 (May 2010 FMLA Leave Application ("First FMLA Leave Appl.")) at 41;[5] see also Def.'s Mem., Ex. 4 (July 27, 2010 Email From Defendant to Plaintiff ("July 27, 2010 Email")) at 45. According to the plaintiff, her "immediate supervisor" rejected her application the following day because of "insufficient manpower." Def.'s Facts II ¶ 5 (quoting Pl.'s Opp'n, Ex. 1 (Affidavit of Cynthia Lovely-Coley ("Lovely-Coley Aff.") ¶ 6); Pl.'s Opp'n, Ex. 2 (Excerpts of the Deposition of Lovely-Coley ("Lovely-Coley Dep.")) at 46:9-20, 61:4-20). Nevertheless, at or about that same time, the Human Resource Management Division of the D.C. Police Department ("Human Resources") approved the plaintiff's FMLA leave application because it was "under the impression that the application had been submitted through the chain-of[-]command." Def.'s Mem., Ex. 4 (July 27, 2010 Email) at 45; see also Def.'s Facts II ¶ 6; Pl.'s Opp'n, Ex. 8 (May 26, 2010 Email From Plaintiff's Supervisor to Human Resources ("May

---

[3] Hereinafter, the Court will refer to the District of Columbia Metropolitan Police Department as the "D.C. Police Department" or the "Department."

[4] Although immaterial, the plaintiff has not explained why she sought leave for any period of time earlier than May 25, 2010.

[5] In referencing the parties' exhibits, the Court will use as pincites the numbers assigned to the pages of the exhibits by the Court's electronic court filing ("ECF") system.

26, 2016 Email")) at 2.  On May 27, 2010, in an email, the defendant informed the plaintiff that Human Resources "granted [her FMLA leave application] in error" and was "immediately rescinding the approval" because "no one within [her] chain-of[-]command had any knowledge of the [FMLA] application being filed[.]"  Def.'s Mem., Ex. 4 (July 27, 2010 Email) at 45.  Instead, the email "urge[d]" the plaintiff to "resubmit the [FMLA leave] application through the proper channels."  Id.

On July 28, 2010, the plaintiff again applied for FMLA leave to be used "[i]ntermittently as medically necessary."  Def.'s Mem., Ex. 5 (July 2010 FMLA Leave Application ("Second FMLA Leave Appl. I")) at 49; see also Pl.'s Facts ¶ 3.  The FMLA leave application was apparently denied, see Pl.'s Opp'n, Ex. 5 (July 2010 FMLA Leave Application ("Second FMLA Leave Appl. II")) at 5 ("FMLA disapproved—annual leave approved"), but the defendant claims that "what happened to this application" is "unclear," Def.'s Mem. at 2.

On or about August 18, 2010, the plaintiff submitted a third FMLA leave application "to be used intermittently from August 22, 2010 [through] December 11, 2010."  See Pl.'s Opp'n, Ex. 5 (August 2010 FMLA Leave Application ("Third FMLA Leave Appl.")) at 10; see also Pl.'s Facts ¶ 4.  The following day, the application was approved.  See Def.'s Facts II ¶ 11; Pl.'s Opp'n, Ex. 9 (August 19, 2010 Internal Defendant Email ("Aug. 19, 2010 Email")) at 2.  The plaintiff asserts that nobody told her that the FMLA request had been approved.  See Def.'s Facts II ¶ 12.  Instead, on August 24, 2010, the plaintiff received a note informing her that her third application was denied and advising her that if her "situation" continued, she needed to consider taking a leave of absence to afford the defendant an opportunity to hire a replacement.  Pl.'s Opp'n, Ex. 5 (August 24, 2010 Note From Defendant to Plaintiff ("Aug. 24, 2010 Note")) at 10-11.  Ultimately, this third application was approved on or about October 1, 2010.  See Def.'s

Facts II ¶ 18; see also Pl.'s Opp'n, Ex. 5 (Third FMLA Leave Appl.) at 13 (handwritten notations indicating that third FMLA application was approved).

As a result of the FMLA leave denials, the plaintiff notes that she "was forced to use 112 [sick and annual] leave hours" between May 25, 2010, and October 1, 2010.  Pl.'s Surreply at 2.

### B.    The Defendant's Alleged Retaliation

On or about September 9, 2010, the plaintiff complained to the D.C. Police Department's Equal Employment Opportunity Office ("EEO") about the denial of her requests for FMLA leave.  Def.'s Facts II ¶ 15; see also Pl.'s Opp'n, Ex. 10 (September 9, 2010 Email From D.C. Police Department EEO to Plaintiff ("Sept. 9, 2010 Email")) at 2.  Thereafter, she alleges that the Department took "a series of retaliatory actions" against her, including the issuance of "two low performance reviews that made her ineligible for promotion" in 2010 and 2011.  Pl.'s Opp'n, Ex. 1 (Lovely-Coley Aff.) ¶ 15; see also id. ¶ 16; Pl.'s Opp'n, Ex. 2 (Lovely-Coley Dep.) at 116:14-120:8.  The plaintiff eventually appealed these performance evaluations internally, and they "were upgraded."  Def.'s Mem. at 7; see also Pl.'s Surreply at 3 ("[T]he [low] reviews were only overturned after a lengthy appeal process." (citing Pl.'s Opp'n, Ex. 2 (Lovely-Coley Dep.) at 92:5-93:6)).

### C.    Damages

Following these events, the plaintiff commenced this litigation, asserting interference and retaliation claims pursuant to the FMLA.  See Compl. ¶¶ 1-34.  She seeks damages of $4,118.00, which is the alleged monetary value of the 112 hours of sick and annual leave she used between May 25, 2010, and October 1, 2010, as well as $557,370.00 in compensation from lost promotion potential.  Pl.'s Surreply at 6; see also Compl. at 9.  The defendant has moved for summary judgment, which the plaintiff opposes.

4

## II.     STANDARD OF REVIEW

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material 'if it might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (one ellipsis omitted) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to defeat

a motion for summary judgment, as "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.     ANALYSIS

"The [FMLA] entitles eligible employees to take up to [twelve] work weeks of unpaid leave annually for any of several reasons, including the onset of a 'serious health condition' in an employee's spouse, child, or parent." Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 724 (2003) (quoting 29 U.S.C. § 2612(a)(1)(C)). It "creates a private right of action to seek both equitable relief and money damages 'against any employer . . . ,' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights[.]" Id. at 724-25 (first quoting 29 U.S.C. § 2617(a)(2); and then quoting 29 U.S.C. § 2615(a)(1)). "An employer may be held liable for violating the FMLA under two distinct claims: (1) interference, if the employer restrained, denied, or interfered with the employee's FMLA rights, and (2) retaliation, if the employer took adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act." Holloway v. District of Columbia, 9 F. Supp. 3d 1, 7 (D.D.C. 2013) (citing Deloatch v. Harris Teeter, 797 F. Supp. 2d 48, 64 (D.D.C. 2011); Price v. Wash. Hosp. Ctr., 321 F. Supp. 2d 38, 45-46 (D.D.C. 2004)). "Under both the interference and retaliation theories, the FMLA affords relief only for actual damages," and thus, "[p]rejudice to the employee is a necessary element of these claims . . . ." Roseboro v. Billington, 606 F. Supp. 2d 104, 108 (D.D.C. 2009) (citation and footnote omitted). "An FMLA violation prejudices an employee only when the 'employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief.'" Id. at 108 (quoting Reed v. Buckeye Fire Equip., 241 F. App'x 917, 924 (4th Cir. 2007)). The defendant concedes that as to

6

both the interference and retaliation claims, "[t]he only issue in this case is whether [the plaintiff] has suffered any harm compensable under the [FMLA]." Def.'s Reply at 1. Given this concession, and drawing all justifiable inferences in favor of the plaintiff, summary judgment on the issue of prejudice is improper.

First, with respect to the interference claim, although the defendant maintains that it has permitted the plaintiff to take leave whenever she needed, see Def.'s Mem. at 2-3 (identifying leave dates), that does not necessarily render summary judgment appropriate, see McFadden v. Ballard Spahr Andrews & Ingersoll, LLP, 611 F.3d 1, 3, 7 (D.C. Cir. 2010) ("[The plaintiff] can succeed on her [interference] claim under the FMLA without showing [that the defendant] denied her any leave she requested . . . ." (citations omitted)). There is at least a genuine dispute as to whether she properly elected to take FMLA leave to care for her daughter, see Pl.'s Opp'n, Ex. 6 (June 1991 Special Order ("Special Order")) at 1 ("Members are eligible to use any one, or combination of, annual leave, personal leave days, compensatory leave, or leave without pay, as family leave[.]"), as well as whether the defendant's conduct deterred the plaintiff from taking FMLA leave—thereby compelling her to use sick and annual leave hours, see Pl.'s Opp'n, Ex. 2 (Lovely-Coley Dep.) at 120:9-22. If so, a reasonable jury could find that the defendant's alleged conduct prejudiced the plaintiff because she was forced to use sick and annual leave hours that she otherwise would not have taken, see Pl.'s Surreply at 2-3; see also Def.'s Mem., Ex. 6 (June 2010 Through January 2011 Attendance Records ("Attendance Records")) at 2-19, and that this loss in benefits is compensable through monetary relief, such as the value of each hour of leave she unnecessarily used,[6] see McFadden, 611 F.3d at 3, 7 (reversing summary judgment on

---

[6] To the extent the plaintiff seeks any monetary compensation for the time she lost with her dying child, Pl.'s Facts ¶ 7 ("A mother's lost time with a dying child is quantifiable."), such relief is prohibited, see, e.g., Rodgers v. City of Des Moines, 435 F.3d 904, 909 (8th Cir. 2006) ("Our sister circuits . . . have held emotional distress damages are

(continued . . . )

7

FMLA retaliation claim where reasonable jury could find that defendant discouraged plaintiff from taking FMLA leave), or equitable relief such as the restoration of the plaintiff's annual and sick leave hours.

Second, as to the retaliation claim, despite the fact that the plaintiff's low performance reviews in 2010 and 2011 were favorably changed after an appeal process, there remains a genuine dispute as to whether the performance evaluations hurt her candidacy for promotion <u>at the time</u> she received those reviews, which occurred well before her performance reviews were amended. See <u>Gordon v. U.S. Capitol Police</u>, 778 F.3d 158, 162-63 (D.C. Cir. 2015) (allegations of "diminish[ed] . . . prospects for pay increases, promotion, and transfer" constitute prejudice). A jury could reasonably find that the plaintiff was prejudiced because the defendant "prevented the [plaintiff] from advancing to a [more senior position]" in 2010 and 2011, Pl.'s Surreply at 3, and such a denial is compensable through monetary relief, such as the amount of salary increase she would have received upon a proper, non-retaliatory performance evaluation, <u>see</u> 29 U.S.C. § 2617 (a)(1)(A)(i)(I) (monetary damages include "any wages, salary, employment benefits, or other compensation denied or lost"); <u>see also</u> <u>Gordon</u>, 778 F.3d at 162-63, or equitable relief such as a promotion, <u>see</u> 29 U.S.C. § 2617 (a)(1)(B) ("appropriate" equitable relief "includ[es] employment, reinstatement, and promotion").

### IV. CONCLUSION

The plaintiff has shown that genuine disputes of material fact exist as to whether the defendant interfered with her rights under the FMLA and retaliated against her for attempting to

---

( . . . continued)
not recoverable under the FMLA. These courts have reasoned that because the FMLA specifically lists the types of damages for which an employer may be liable and the list includes only the actual monetary losses of the employee, the FMLA does not permit recovery for emotional distress damages." (citations omitted)); <u>Knussman v. State</u>, 65 F. Supp. 2d 353, 356-57 (D. Md. 1999) ("[E]vidence of emotional distress and lost time with . . . newborn daughter as consequential damages resulting from the . . . FMLA violations . . . are not recoverable . . . ."), <u>aff'd in part, vacated in part, remanded</u>, 272 F.3d 625 (4th Cir. 2001).

exercise those rights. More specifically, a reasonable jury could find that the defendant's alleged conduct prejudiced her in such a manner that either monetary or equitable relief can remedy that prejudice. Accordingly, the Court must deny the defendant's summary judgment motion.

**SO ORDERED** on this 8th day of June, 2016.[7]

REGGIE B. WALTON<br>United States District Judge

---

[7] The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.