UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
CYNTHIA LOVELY-COLEY,           )
                                )
            Plaintiff,          )
                                )
       v.                       )    Civil Action No. 12-1464 (RBW)
                                )
DISTRICT OF COLUMBIA,           )
                                )
            Defendant.          )
_____ )

## MEMORANDUM OPINION

The plaintiff, Cynthia Lovely-Coley, brings this civil action against the defendant, the District of Columbia (the "District"), asserting claims of interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611–2619 (2012), arising out of delays in granting her applications for FMLA leave in 2010. See Civil Complaint for Equitable and Monetary Relief and Demand for Jury Trial ("Compl.") ¶¶ 1–34. Currently pending before the Court are the Defendant's Motion for Reconsideration of the Court's Order Denying Motion for Summary Judgment ("Def.'s Mot."), and the Plaintiff's Motion for Leave to File an Amended Complaint and Reopen Discovery ("Pl.'s Mot."). Upon careful consideration of the parties' submissions and the oral arguments heard at the December 20, 2016 motion hearing,[1] the Court concludes that the District's motion must be granted and the plaintiff's motion must be denied.[2]

---

[1] At this hearing, the Court entertained oral arguments on the defendant's motion for reconsideration and concluded that it would "render its ruling on the [defendant's] motion for reconsideration[] upon resolving the plaintiff's motion for leave to file an amended Complaint." Order (Dec. 22, 2016), ECF No. 54.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of District of Columbia's Motion for Summary Judgment ("Def.'s Summ. J. Mem."); (2) the plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s

(continued . . .)

# I. BACKGROUND

Much of the factual background of this case has been previously set forth by the Court, see Lovely-Coley v. District of Columbia, 191 F. Supp. 3d 20, 22–23 (D.D.C. 2016) (Walton, J.), and therefore, the Court will not recount all of the facts again here. However, relevant to the pending motions is a brief summary of the current procedural posture of this case.

On June 8, 2016, the Court issued a ruling denying the defendant's motion for summary judgment because it had concluded that (1) "[t]he plaintiff ha[d] shown that genuine disputes of material fact exist as to whether the [District] interfered with [the plaintiff's] rights under the FMLA and retaliated against her for attempting to exercise those rights" and (2) "a reasonable jury could find that the [District's] alleged conduct prejudiced [the plaintiff] in such a manner that either monetary or equitable relief can remedy that prejudice." Lovely-Coley, 191 F. Supp. 3d at 26. Thereafter, the parties engaged in unsuccessful settlement discussions, and on October 3, 2016, the Court held a status conference to ascertain how the parties wished to proceed in this case (i.e., continue settlement discussions or proceed with trial). At this hearing, the District made an oral request to file a motion for reconsideration of the Court's denial of its summary judgment motion based on information obtained during settlement negotiations. The District represented that the new information identified would in fact preclude the damages the plaintiff claims she is entitled to receive. The Court granted the District's oral request, and after

---

( . . . continued)
Summ. J. Opp'n"); (3) the District of Columbia's Reply to Plaintiff's Opposition to District of Columbia's Motion for Summary Judgment ("Def.'s Summ. J. Reply"); (4) the Plaintiff's Surreply to Defendant's Reply in Support of Defendant's Motion for Summary Judgment ("Pl.'s Sur-Reply"); (5) the Memorandum of Points and Authorities in Support of Defendant's Motion for Reconsideration of the Court's Order Denying Motion for Summary Judgment ("Def.'s Mem."); (6) the Plaintiff's Opposition to Defendant's Motion for Reconsideration ("Pl.'s Opp'n"); (7) the Reply to Plaintiff's Opposition to Defendant's Motion for Reconsideration ("Def.'s Reply"); (8) the Memorandum in Support of Plaintiff's Motion for Leave to File an Amended Complaint and Reopen Discovery ("Pl.'s Mem."); (9) the Defendant's Opposition to Plaintiff's Motion to Amend the Complaint and Reopen Discovery ("Def.'s Opp'n"); and (10) the Reply in Support of Plaintiff's Motion for Leave to Amend and Reopen Discovery ("Pl.'s Reply").

the District's motion for reconsideration was fully briefed, the Court held an additional hearing, wherein it entertained oral arguments on the District's motion.

During the oral arguments, the District argued that the plaintiff would be unable to establish compensable injuries because the Metropolitan Police Department (the "MPD") "had no paid family leave program during the relevant time period, and did not implement one until 2014," and because there had not been a formal selection of or a promotion of anyone to Detective Grade One during the relevant time period. The plaintiff responded that she would be able to show damages because she alleged in her Complaint that her "meets expectations" performance evaluations prevented her from also seeking a lateral transfer to a different unit within the MPD, and that such transfer was a form of a promotion that she was constructively denied from obtaining. The District disputed that there was any allegation of the denial of a promotion on the basis of a lateral transfer in the plaintiff's Complaint, and when the plaintiff was unable to identify or direct the Court to the purported allegations in her Complaint, she orally requested to file a motion for leave to file an amended complaint, which the Court granted. Given that the parties have now completed briefing the plaintiff's motion for leave to file an amended complaint, the Court finds it appropriate to address both the plaintiff's motion for leave to file an amended complaint and the District's motion for reconsideration.

## II. STANDARDS OF REVIEW

### A. Motions for Leave to File Amended Complaint

This District's "case law makes clear that once the court enters a scheduling order, that schedule can only be modified with the court's consent and with good cause shown." A Love of Food I, LLC v. Maoz Vegetarian USA, Inc., 292 F.R.D. 142, 143 (D.D.C. 2013) (citing cases); see also Lurie v. Mid-Atl. Permanente Med. Grp., P.C., 589 F. Supp. 2d 21, 23 (D.D.C. 2008)

3

("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." (quoting Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008))). While Rule 15(a) governs motions to amend pleadings filed within the time allotted by the scheduling order, Rule 16(b) governs motions to amend pleadings filed after the deadline provided by the scheduling order. See Brooks v. Clinton, 841 F. Supp. 2d 287, 296 (D.D.C 2012). "To hold otherwise would allow Rule 16's standards to be short circuited by those of Rule 15 and would allow for parties to disregard scheduling orders, which would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." Lurie, 589 F. Supp. 2d at 23 (internal citations and quotations omitted). "This approach is consistent with the circuits that have addressed this question." A Love of Food, 292 F.R.D. at 144 (citing Nourison Rug Corp., 535 F.3d at 298 (identifying cases from the First, Second, Fifth, Sixth, Eighth, and Eleventh Circuits that have addressed the question)).

    **B.    Motions for Reconsideration**

Under Federal Rule of Civil Procedure 54(b), any order or decision that does not constitute a final judgment "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Although "district court[s] ha[ve] 'broad discretion to hear a motion for reconsideration brought under Rule 54(b),'" Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 164 F. Supp. 3d 56, 62 (D.D.C. 2016) (quoting Isse v. Am. Univ., 544 F. Supp. 2d 25, 29 (D.D.C. 2008)), district courts grant motions for reconsideration of interlocutory orders only "as justice requires," Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting

Greene v. Union Mut. Life Ins. Co. of Am., 764 F.2d 19, 22–23 (1st Cir. 1985)).

      **C.     Motions for Summary Judgment**

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (one ellipsis omitted) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). "The mere existence of

5

a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to defeat a motion for summary judgment, as "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## III. ANALYSIS

### A. The Plaintiff's Motion for Leave to File An Amended Complaint and Reopen Discovery

The District argues that the Court should deny the plaintiff leave to file an amended complaint because the plaintiff has not met her burden of demonstrating the existence of "good cause" under Rule 16(b). See generally Def.'s Opp'n. Specifically, the District contends that the plaintiff's proposed amendments "follow[ ] four years of litigation, two years of discovery, a ruling on summary judgment, and a pending motion for reconsideration," and therefore, "in light of the procedural posture of [this] case," the plaintiff was not diligent in seeking to amend her Complaint and her motion was therefore filed "in bad faith." Id. at 2. In response, the plaintiff asserts that she did not unduly delay seeking to amend her Complaint because her request was made due to the fact that "this Court requested clarity about the actual harm to [her] caused by [the District's alleged] FMLA violations, as it [was] consider[ing the District's] Motion for Reconsideration." Pl.'s Reply at 12. The plaintiff further argues that "[h]er proposed amendments further show the impact of the violations on her career advancement and loss of income" and that "she could not have pled these allegations earlier because [the District] only notified her of its new defense in its Motion for Reconsideration." Id. at 13.

Under Rule 16(b), the determination of whether "good cause" exists turns on the moving party's diligence. See A Love of Food, 292 F.R.D. at 144. Thus, "the Court's inquiry must focus on the reasons the [plaintiff] has given for [her] delay instead of the substance of the proposed amendment." Lurie, 589 F. Supp. 2d at 23. In other words, "Rule 16(b)'s good cause

6

standard focuses on the timeliness of the amendment and the reasons for its tardy submission." Id. (citations and quotations omitted). Additionally, if the moving party establishes that she acted diligently, she must also show that there is a lack of prejudice to the opposing party. See In re Papst Licensing GmbH & Co. KG Litig., 767 F. Supp. 2d 1, 8 (D.D.C. 2011); see also United States v. Kellogg Brown & Root Servs., Inc., 285 F.R.D. 133, 136 (D.D.C. 2012) ("If the party was not diligent, the inquiry should end." (citation omitted)).[3]

Here, the plaintiff's explanation for the tardiness of her proposed amendments "falls [ ] short of the 'good cause' required for allowing a plaintiff to amend [her] complaint under Rule 16(b)." Lurie, 589 F. Supp. 2d at 23–24. Contrary to the plaintiff's position, see Pl.'s Reply at 12 ("After she was notified about [the District's] newly discovered evidence, she sought leave to amend her Complaint . . . [and] the proposed amendments deliver on the Court's request." (internal quotation marks omitted)), she, as the District notes, did not provide any "indication [that she sought] to amend [her Complaint] until oral arguments on [the District's] motion for reconsideration," Def.'s Opp'n at 3. During oral arguments, the Court indicated that, based on the District's evidence regarding the plaintiff's inability to seek a promotion to Grade One Detective due to "a freeze on [such] promotions since 2004," Def.'s Reply at 3, she would be unable to demonstrate compensable harm predicated on her low performance reviews in 2010 and 2011 with respect to her retaliation claim. The plaintiff responded that she nonetheless would be able to demonstrate compensable harm despite the promotional freeze because she had alleged in her Complaint that her low performance reviews not only precluded her from seeking

---

[3] In their submissions, the parties devote a significant portion of their arguments on the futility of the plaintiff's proposed amendments. However, because the futility of the proposed amendments concerns the substance of the proposed amendments, and because the substance of the proposed amendments is not a factor for consideration in the "good cause" analysis, the Court need not consider these arguments. See Lurie, 589 F. Supp. 2d at 23 (citing O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004) (noting that the Court in O'Connell refused "to address whether the amendment to the complaint would be 'futile,' because futility is a Rule 15(a) consideration, not a Rule 16(b) consideration").

a promotion but also a lateral transfer to another division within the MPD. The Court then asked the plaintiff to direct it to where in her Complaint she made allegations concerning the inability to seek a lateral transfer to another division due to the low performance reviews; however, the plaintiff was unable to do so. See generally Compl.; see also id. ¶ 32 (alleging only that the low performance reviews "ha[ve] prevented and will prevent [the plaintiff] from being promoted in her division" (emphasis added)). It was only then that the plaintiff sought leave to file an amended complaint. Thus, although the proposed amendments may have been in response to the Court's inquiry regarding the actual harm the plaintiff suffered, it cannot be said that the plaintiff acted diligently in seeking the proposed amendments, particularly because she could have asserted these allegations at the beginning of this litigation, approximately five years ago, which she contends she mistakenly thought she had. See A Love of Food, 292 F.R.D. at 144 (noting that "'[g]ood cause' requires a greater showing than 'excusable neglect'" (citation omitted)).

The Court appreciates, as the plaintiff notes, that her "claims have already survived a motion for summary judgment," Pl.'s Reply at 4; see also id. at 10 ("[The plaintiff's] request to amend her Complaint was immediate after being placed on notice [of the Court's concern]. Before that point, the Complaint was pled sufficiently to defeat [the District's] Motion for Summary Judgment."), and that her proposed amendments purportedly clarify only the compensable harm she allegedly suffered and do not assert "new causes of action," id. at 4. Nonetheless, the Court finds it troubling that it was not until being threatened with potential termination of her case through reconsideration of essential facts underlying her FMLA claims that the plaintiff first sought leave to file an amended complaint. Such legal maneuvering—attempting to evade an adverse summary judgment ruling resulting from the District's motion for reconsideration—has widely been considered an inappropriate basis for a district court to grant a

plaintiff's motion to amend her complaint submitted well past the deadline for amendments designated in the Court's scheduling order. See Lawrence v. Lew, 156 F. Supp. 3d 149, 175 (D.D.C. 2016) ("A motion to amend the complaint cannot be used as 'an effort to evade summary judgment.'" (quoting Key Airlines, Inc. v. Nat'l Mediation Bd., 745 F. Supp. 749, 752 n.9 (D.D.C. 1990))); see also Brown v. FBI, 744 F. Supp. 2d 120, 123 (D.D.C. 2010) (same).

Accordingly, the plaintiff's undue delay and timing in seeking to amend her Complaint causes the Court to conclude that the plaintiff's explanation for her tardiness does not constitute "good cause" sufficient to amend her Complaint under Rule 16(b). Because the plaintiff has not shown that she acted with diligence, "the Court's inquiry must end, regardless of whether the amendment[s] will assist the factfinder or result in prejudice to the plaintiff." A Love of Food, 292 F.R.D. at 145 (citing Kellogg Brown & Root Servs., 285 F.R.D. at 136).[4] Therefore, the Court must deny the plaintiff's motion for leave to file an amended complaint.

### B. The District's Motion for Reconsideration

The District argues that reconsideration of the Court's denial of its summary judgment motion with respect to both the plaintiff's interference and retaliation claims is warranted because "the Court's [prior] ruling was based on inaccurate facts," Def.'s Reply at 2, which, when accurately considered, "demonstrate that the plaintiff suffered no compensable injury," id. at 3. In other words, according to the District, "summary judgment should [have] be[en] granted in [its] favor" because the plaintiff's arguments asserted in the Court ordered sur-reply were purportedly "premised on a misunderstanding of the MPD's leave and promotion policies during the relevant time period." Def.'s Mem. at 2; see also id. at 3–4 (noting that, during the relevant time period, the MPD did not have a paid FMLA leave program and there was a promotional

---

[4] Having decided to deny the plaintiff's motion for leave to amend her Complaint, the Court need not consider her request to reopen discovery regarding the proposed amendments.

9

freeze precluding advancement to Grade I Detective). The plaintiff responds that "[w]ith this pending [m]otion, [the District] attempts to either: a) reargue facts and theories that this Court has already ruled upon; or b) present theories or arguments that could have been advanced earlier[, which] . . . [t]he law forbids." Pl.'s Opp'n at 3. Furthermore, the plaintiff asserts that the affidavit submitted in support of the District's motion neither "constitutes 'new evidence that was not previously available' or 'newly discovered evidence' that would support a motion for reconsideration," id. at 4, and that the District has not made any showing that "some harm would accompany a denial of its [m]otion" or "that it will suffer any injustice if the Court denies its [m]otion," id. at 7.

As previously noted, "relief under Rule 54(b) is available 'as justice requires.'" Davis v. Joseph J. Magnolia, Inc., 893 F. Supp. 2d 165, 168 (D.D.C. 2012) (quoting Capitol Sprinkler Inspection, Inc., 630 F.3d at 227). In deciding whether "justice requires" reversal of a prior interlocutory order, courts assess circumstances such as "whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." In Defense of Animals v. NIH, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (quoting Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); see also Davis, 893 F. Supp. 2d at 168 ("[A] motion for reconsideration is discretionary and should not be granted unless the movant presents either newly discovered evidence or errors of law or fact that need correction."). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." United States ex rel. Westrick v. Second Chance Body Armor, Inc., 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (citing Husayn v. Gates, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)). And motions for

10

reconsideration are not vehicles for either reasserting arguments previously raised and rejected by the court or presenting arguments that should have been raised previously with the court. Estate of Gaither ex rel. Gaither v. District of Columbia, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011).

Here, as the plaintiff notes, see Pl.'s Opp'n at 7, the District has failed to make any showing that "denying [its] motion for reconsideration, would somehow harm the [District] or be otherwise unjust." Cobell v. Norton, 355 F. Supp. 2d 531, 540 (D.D.C. 2005); see generally Def.'s Mem. (failing to address why denial of its motion would cause it harm or be unjust); Def.'s Reply (same). Thus, generally under "the relevant legal standard, then, this Court would deny the [District's] motion." Id. However, because the decision to grant or deny a motion for reconsideration is within the sole discretion of the Court, "the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." Id. And the Court finds, based on the record in this case, that good reasons for granting the District's motion for reconsideration exist because contrary to the plaintiff's position, see Pl.'s Opp'n at 3 (asserting that the District's motion attempts to either "reargue facts and theories" already decided or present "theories or arguments that could have been advanced earlier"), the District's motion seeks only to clarify "errors of . . . fact that need correction," Davis, 893 F. Supp. 2d at 168, concerning the damages that the Court iterated were available to the plaintiff if a jury concluded that the plaintiff was prejudiced by the District's alleged conduct.

At the summary judgment stage, "[t]he only issue in this case [was] whether [the plaintiff] ha[d] suffered any harm compensable under the [FMLA]." Lovely-Coley, 191 F. Supp. 3d at 25 (first, third, and fifth alterations in original) (citation omitted). Because it was unclear what damages the plaintiff sought, see Compl. at 9 (requesting only "[c]ompensatory damages in

the amount of $525,000 resulting from the [alleged] interference and retaliation actions" (emphasis added)); see generally Pl.'s Summ. J. Opp'n (failing to argue what monetary or equitable relief she sought in light of the District's conduct for either of her FMLA claims), the Court ordered the plaintiff to file a sur-reply in response to the District's reply in support of its motion for summary judgment because "[t]he Court need[ed] additional briefing" on "the specific remedy for th[e] harm or prejudice suffered, especially where an equitable remedy is sought," Order at 1 (May 10, 2016), ECF No. 46. In her sur-reply, the plaintiff indicated for the first time that she sought $4,118.00, "the monetary value of the 112 hours of sick/annual leave she used" due to the District's alleged interference with her attempts to use her FMLA leave, Pl.'s Sur-Reply at 2, and $35,000 for "the salary increase she would have received as a Grade 1 Detective in 2010" had the District not purportedly retaliated against her by giving her low performance reviews, id. at 4. Thereafter, with a clearer understanding of the damages the plaintiff sought, the Court issued its summary judgment decision, concluding that a reasonable jury could find that the District's alleged wrongful conduct was compensable through both monetary relief, see Lovely-Coley, 191 F. Supp. 3d at 25–26 (i.e., "the value of each hour of leave [the plaintiff] unnecessarily used" and "the amount of salary increase she would have received upon a proper, non-retaliatory performance evaluation"), and equitable relief, see id. (i.e., "the restoration of the plaintiff's annual and sick leave hours" or "promotion") regarding both the plaintiff's interference and retaliation claims respectively.

Although the plaintiff was afforded an opportunity to clarify the damages she sought, an essential element of both of her FMLA claims, the District was not provided a similar opportunity to respond to the plaintiff's assertions, which the Court reiterates were made for the first time in the her sur-reply. Therefore, any prejudice the District may have suffered—not

12

having the opportunity to clarify the facts surrounding the MPD's policies during the relevant time period as they relate to the plaintiff's claims—is remedied by the filing of the District's motion for reconsideration. See Campbell ex rel. Jackson v. Hoffman, 61 F.3d 915 (Table), 1995 WL 441415, at *2 n.2 (10th Cir. July 12, 1995) (noting that the plaintiff "had the opportunity to fully respond . . . on his motion for reconsideration").

Furthermore, in its summary judgment briefings, the District did not argue that the MPD did not have a paid FMLA leave program at the time relevant to this case, see Def.'s Summ. J. Mem. 7–8 (asserting that the plaintiff failed to allege monetary losses or seek equitable relief which are the only damages recoverable under the FMLA); see also Def.'s Summ. J. Reply at 2–4 (same), or that there was a freeze on all promotions to Grade One Detective during the relevant time peroid, see Def.'s Summ. J. Mem. at 7 (arguing that only "a rating below 'Meets Expectations'" could preclude the plaintiff from promotion according to the MPD's governing order); see also Def.'s Summ. J. Reply at 3 (contending that the plaintiff "has no injury compensable under the [FMLA]" because "the [FMLA] quite clearly does not allow for non-economic compensatory or symbolic damages"). Thus, the District is not "reargu[ing] facts and theories that the Court already ruled upon," Pl.'s Opp'n at 3, as the facts it has now offered clarifying the MPD's policies were not previously before the Court, see Estate of Gaither, 771 F. Supp. 2d at 10 ("In this Circuit, it is well-established that 'motions for reconsideration,' whatever their procedural basis, cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled . . . .'" (citation omitted)); see also Singh, 383 F. Supp. 2d at 101 ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (citation and internal quotation marks omitted)). And although the District's facts clarifying the MPD's policies during the relevant

13

time period could have been advanced earlier, "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" Cobell v. Jewell, 802 F.3d 12, 25 (D.C. Cir. 2015) (quoting Greene v. Union Mut. Life Ins. Co. of Am., 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.)). Accordingly, because "justice [so] requires," Davis, 893 F. Supp. 2d at 168, consideration of these additional facts and arguments, the Court must grant the District's request that it reconsider its ruling on the District's summary judgment motion.

### C. The Court's Denial of the District's Summary Judgment Motion

Having determined that reconsideration of its ruling denying the District's motion for summary judgment is warranted, the Court will now assess whether the facts clarifying the MPD's policies during the relevant time period alter its prior conclusions. In making this determination, the Court notes that "[u]nder both the interference and retaliation theories, the FMLA affords relief only for actual damages," and thus, "[p]rejudice to the employee is a necessary element of these claims . . . ." Roseboro v. Billington, 606 F. Supp. 2d 104, 108 (D.D.C. 2009) (citation and footnote omitted). "An FMLA violation prejudices an employee only when the 'employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief.'" Id. (quoting Reed v. Buckeye Fire Equip., 241 F. App'x 917, 924 (4th Cir. 2007)). With this backdrop, the Court will address in turn the District's clarifying facts with respect to both the plaintiff's interference and retaliation claims.

### 1. The Plaintiff's Interference Claim

In its prior summary judgment ruling, the Court ruled:

> There is at least a genuine dispute as to whether [the plaintiff] properly elected to take FMLA leave to care for her daughter, as well as whether the defendant's conduct deterred the plaintiff from taking FMLA leave—thereby compelling her to use sick and annual leave hours. If so, a reasonable jury could find that the [District's] alleged conduct prejudiced the plaintiff because she was forced to use sick and annual leave hours that she otherwise would not have taken, and that this loss in benefits is compensable through monetary relief, such as the value of each hour of leave she unnecessarily used, or equitable relief such as the restoration of the plaintiff's annual and sick leave hours.

Lovely-Coley, 191 F. Supp. 3d at 25 (citations omitted). In response to that ruling, the District asserts that "the MPD had no paid family leave program during the relevant time period, and did not implement one until 2014," and therefore, the "plaintiff was not forced to use sick and annual leave hours that she otherwise would not have taken." Def.'s Mem. at 3. In other words, "[b]ecause there was no separate bank of paid family leave or 'FMLA leave' for the plaintiff to use," she "would have used these same sick and annual leave hours as family leave under the policy in existence at the time." Id.

Although there still remain genuine disputes "as to whether [the plaintiff] properly elected to take FMLA leave to care for her daughter, . . . as well as whether the [District's] conduct deterred the plaintiff from taking FMLA leave—thereby compelling her to use sick and annual leave hours," Lovely-Coley, 191 F. Supp. 3d at 25, the plaintiff has failed to show that she was prejudiced by the District's alleged interference that caused her to suffer a loss in either benefits or compensation. By taking her personal sick and annual leave balance to care for her daughter, the plaintiff received monetary compensation for her leave. Had she taken her FMLA leave, which would have been without pay, see Def.'s Mot., Attachment ("Att.") 3 (Affidavit of Matthew Miranda ("Miranda Aff.")) ¶ 4 (a Special Assistant Manager in the MPD stating that there was no paid FMLA leave during the relevant time period); see also Pl.'s Opp'n, Att. 1

15

(Declaration of Fulvia Brooks ("Brooks Decl.")) (a retired Detective Sergeant in the MPD failing to dispute the District's assertion that there was no paid FMLA leave during the relevant time period), the plaintiff would not have received any compensation. Thus, the District's alleged interference did not "cause[] [the plaintiff any] loss of compensation." Roseboro, 606 F. Supp. 2d at 112. And, even if a jury concluded that the plaintiff suffered a loss in benefits, see Pl.'s Opp'n at 5 ("[The] plaintiff did not have to use her personal sick and annual leave balances. She could have used her personal sick and annual leave for another time that did not concern a family or medical emergency." (citing Pl.'s Opp'n, Att. 1 (Brooks Decl.) ¶ 4))), this loss in benefits would not be "compensable through monetary relief, such as the value of each hour of leave [the plaintiff] unnecessarily used or equitable relief[,] such as the restoration of the plaintiff's annual and sick leave hours," Lovely-Coley, 191 F. Supp. 3d at 25 (citations omitted), without the plaintiff having to reimburse the District for the compensation she received for taking her paid annual and sick leave. Otherwise, the plaintiff would receive a windfall in regards to the amount of compensation she was entitled to receive—if awarded monetary relief in the value of the hours used, the additional compensation she would receive, and if awarded equitable relief through the restoration of the hours used, the money already received for using the hours and the added benefit of reusing those restored hours. Consequently, the plaintiff has not demonstrated that she was prejudiced by the District's alleged interference that she contends resulted in a loss of benefits or compensation, and therefore, summary judgment should have been entered in favor of the District on the plaintiff's interference claim.

### 2. The Plaintiff's Retaliation Claim

The Court previously concluded that "there remains a genuine dispute as to whether the performance evaluations hurt [the plaintiff's] candidacy for promotion <u>at the time</u> she received

16

those reviews, which occurred well before her performance reviews were amended."

Lovely-Coley, 191 F. Supp. 3d at 25. The Court further determined that

> [a] jury could reasonably find that the plaintiff was prejudiced because the defendant "prevented the [plaintiff] from advancing to a [more senior position]" in 2010 and 2011, and such a denial is compensable through monetary relief, such as the amount of salary increase she would have received upon a proper, non-retaliatory performance evaluation, or equitable relief such as a promotion.

Id. at 26 (citations omitted). The District argues that the "plaintiff was not a candidate for promotion between the time her performance reviews were issued and when they were amended," Def.'s Mem. at 4, because "[t]here has not been a Detective Grade One selection process since sometime in 2004," see id. (citing Def.'s Mot., Att. 3 (Miranda Aff.) ¶ 8).

Similar to the circumstances surrounding her interference claim, the plaintiff has failed to demonstrate that the District's alleged retaliatory conduct prejudiced her as required under the FMLA, because the plaintiff does not dispute that there was "a freeze on the formal Grade I selection process." Pl.'s Opp'n, Att. 1 (Brooks Decl.) ¶ 9. In any event, even though the plaintiff alleges that her low performance reviews "prevent[ed] her from being promoted in her division," Compl. ¶ 32, she was not a candidate for promotion to Grade I Detective due to the freeze on such promotions. Therefore, contrary to the Court's prior conclusion, the plaintiff has not shown that "[a] jury could reasonably find that [she] was prejudiced" by the District's alleged retaliatory conduct, which purportedly "'prevented [her] from advancing to a [more senior position]' in 2010 and 2011." Lovely-Coley, 191 F. Supp. 3d at 26 (quoting Pl.'s Surreply at 3). Accordingly, summary judgment should also have been granted in the District's favor on the plaintiff's retaliation claim.[5]

---

[5] In her opposition, the plaintiff relies on Ali v. Carnegie Institution of Washington, 309 F.R.D. 77, 86 (D.D.C. 2015), for the proposition that the District's argument regarding the promotional freeze must "be ignored" because it is a new argument. Pl.'s Opp'n at 6. However, the plaintiff's reliance on this case is to no avail because the Court
(continued . . . )

## IV.  CONCLUSION

In sum, the Court must deny the plaintiff's motion for leave to file an amended Complaint because her explanation for her tardiness in bringing the proposed amendments do not constitute "good cause" under Rule 16(b).  Additionally, the Court must grant the District's motion for reconsideration because "justice [so] requires," Davis, 893 F. Supp. 2d at 168, consideration of the facts clarifying the MPD's policies during the relevant time period.  Finally, because the plaintiff is unable to make a showing that the District's alleged conduct prejudiced her in a way that is compensable by either monetary or equitable relief as required by the FMLA, the Court vacates its prior denial of summary judgment and enters summary judgment in favor of the District on both of the plaintiff's FMLA claims.

**SO ORDERED** on this 9th day of June, 2017.[6]

REGGIE B. WALTON
United States District Judge

---

( . . . continued)
has already concluded that "justice requires," Davis, 893 F. Supp. 2d at 168, consideration of this clarifying fact regarding the MPD's promotion policies during the relevant time period.  See supra Part III.B.

[6] The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.